.SCOTT *vs.* TAYLOR.

1. A bill filed by a sister against a brother to compel the conveyance to her of certain property, the title to which had been taken in him under a purchase made by her, to secure the payment of the notes for the purchase money which had been given by him, and upon a verbal agreement to convey to her for life with remainder to her children, on the payment by her of said notes, which payment she alleged had been made, is not a proceeding to change the deed to the brother from a fee simple to a conditional title. Evidence of such agreement and payment was admissible, without infringing the rule that it is not competent to engraft an express trust upon a written deed by parol proof.

2. The verdict for the complainant is supported by the evidence, except in a small matter of calculation, which is ordered corrected.

Trusts.  Deed.  Evidence.  New trial.  Before Judge SPEER.  Rockdale Superior Court.  August Term, 1879.

Report unnecessary.

CLARK & PAGE;  G. W. GLEATON, for plaintiff in error.

J. J. FLOYD, for defendant.

CRAWFORD, Justice.

S. F. Scott brought ejectment against Alfred Taylor for a house and lot.  Pending this action the wife of Taylor filed a bill for injunction and relief against Scott.  She alleged that she made an arrangement in 1858 to purchase this house and lot through her brother, S. F. Scott, and Archa Scott, her father;  the same was to be held to her use for life, with remainder over to her children;  that the price paid was $332.17, for which amount her brother gave small notes, with her father as security, taking the title to himself, which he was to hold until the purchase money was paid back to him, and meanwhile she was to have possession. When the purchase money was paid and he saved harmless, then the deed was to be made to her for life, and after her

·death to her children. That the notes for the purchase money were traded to one Denard, who sued them to judgment, and afterwards agreed to take one-half of the principal in pay- ·ment therefor, which sum she paid; and thereby saved the said S. F. Scott harmless. She prays, therefore, that he be compelled to make conveyance unto her according to said arrangement and understanding.

The defendant by his answer denied that she bought the house and lot as alleged, but set up that he bought for him- ·self and for his own use in fee; that he gave in payment therefor eight promissory notes, three of which were for $110.00, or $111.00, and due December, 1859; the other five were for $221.00, and due in December, 1860; that the first three were traded to John Bostwick and paid off by him; the other five were traded to Washington Denard, who sued them, and that he had himself paid up the same at the rate of fifty cents in the dollar after they were in ·execution.

Upon the trial the jury returned a verdict for the com- plainant, finding that she recover the property in dispute, and that she pay to the defendant, by 1st of May, 1880, $75.00, with interest from 1868, and upon such payment that title be made to her to the said property for life, and in remainder to her children, and that the suit in ejectment be perpetually enjoined.

To this finding the defendant excepted, and moved the ·court to grant him a new trial, which the court refused, and thus the case is before us for review.

The plaintiff in error relies mainly upon two grounds for the grant of a new trial:

1st. That the court erred in admitting parol proof to en- ·graft a trust on the deed to S. F. Scott, in that by the bill ·complainant seeks to change the deed from a fee simple to a ·conditional title.

2d. That the verdict is contrary to the evidence and the weight of evidence.

1. If we concurred with the plaintiff in error in his

premises, then we should also concur with him in the principles of law which he invokes to sustain his objections to the ruling of the court. There is no effort on the part of the complainant to change the deed made to Samuel F. Scott by Bennett Almand. It was made just as she claims, according to the agreement, it was to have been made. Her husband being insolvent, Scott, her brother, was to take it in his own name, give his notes with her father as security for the purchase money, and when they were paid by her he was to convey the title to her for life and to her children after her death. So that, both by agreement and by the payment of the purchase money, if she paid it, it became a resulting trust, and he was in equity and good conscience bound to execute to her the title.

The principle is well settled by the elementary writers, and numerous adjudicated cases, that when the purchase money is paid by one, and the legal title taken in the name of another the person named in the conveyance is but a trustee of him who paid the consideration. "This rule," says Perry on Trusts, "has its foundations in the natural presumption, in the absence of all rebutting circumstances, that he who supplies the purchase money, intends the purchase to be for his own benefit, and not for another, is a matter of convenience and arrangement between the parties for collateral purposes, and this rule is vindicated by the experience of mankind." This same doctrine will be found in Story's Eq. Jur., sec. 1201.

If, then, Mrs. Taylor paid this purchase money, and it was agreed that when she did this Scott was to make her a title, we cannot see that proof to establish those facts was illegal, or that it would be allowing parol proof to engraft an express trust upon a written deed. The testimony upon this matter of the trust is painfully conflicting, the brother and sister testifying in direct contradiction to each other, and so with other members of the family. The jury, under oath, have said that the truth was with the complainant; the judge who also heard the evidence would not disturb their

finding, and, after a close and thorough investigation, we find ample testimony to authorize the conclusion so reached.

2. Was the verdict contrary to the evidence as to the amount of money paid for the land, or the amount paid by Mrs. Taylor to Denard for the executions? Alfred Taylor and Harriet Taylor both swear that *she* bought the land through her brother, and that the purchase price was three hundred and thirty-two dollars and seventeen cents. S. F. Scott and his brother, A. T. Scott, testify, the former that he gave his notes for $110.00 or $111.00 over the $332.17 taken up by Mrs. Taylor, and the latter that he paid off such notes indorsed by Almand for his brother, S. F. Scott, but he does not swear that they were given for the land. This is the direct testimony of the witnesses on this subject, but an examination of the deed from Almand to Scott shows that the consideration expressed therein was $332.17, and which, added to the testimony of Mr. and Mrs. Taylor, and their occupancy of the premises for fifteen or sixteen years, was quite sufficient to authorize the jury in finding as they did.

On the second question, however, we discover that they did find contrary to the evidence as to the amount paid by Scott to aid in taking up the *fi. fas.* There is no dispute as to the payment by him of the $75.00 to Mrs. Taylor, and there is no one who swears that he did not pay back to Mann the $15.00 loaned by him to Mrs. Taylor, whilst the two Taylors, Scott and Mann all swear that he did, so that he was entitled to the sum of $90.00, instead of the $75.00 which was allowed him.

It is therefore ordered and directed that the decree now of file in this case, in the court below, be made to conform to this ruling, and that when the judgment of this court is made the judgment of that court, that the decree stand affirmed in all matters and things therein contained, and be observed and performed by the parties thereto.

Affirmed with directions.