CAIN *v.* VARNADORE.

No. 7597. November 14, 1930. Rehearing denied December 13, 1930.

*H. J. Lawrence,* for plaintiff in error. *J. P. Highsmith,* contra.

Atkinson, J. L. S. Varnadore, owner of certain lands on which he resided and on which were cleared fields and certain timber suitable for production of turpentine, being of advanced years, entered into an agreement with his stepson, A. C. Altman, to convey to the latter a designated part of the lands "in consideration" of and "upon the condition that" Altman "should care for and support and maintain" Varnadore and his wife (mother of Altman) "so long as they and each of them should live;" also on "condition" that Altman should "tend and cultivate the cleared land and work the turpentine trees on" all the land and "divide . . the proceeds therefrom" equally with Varnadore. There was no other consideration for the agreement. When it came to execution of a formal contract, Altman requested that a deed be made to Mabel Altman, his wife, to which Varnadore assented. An attorney was employed to prepare the deed, and to him was stated all that is indicated above. The attorney prepared an absolute deed to Mabel Altman, purporting to be on consideration of "five dollars in hand paid," and it was signed by Varnadore in December, 1925, by making his mark, he supposing that it had been prepared according to instructions. It was intended by Varnadore and A. C. Altman that the above-quoted "conditions" should be expressed in the deed, but they were omitted therefrom by mistake of the attorney and mutual mistake of said parties, or by mistake of Varnadore and fraud of Altman, between whom there were close relations such as between father and son. A few weeks after execution of the deed, Varnadore discovered the omission, and an agreement was made with A. C. Altman to go next day and have the attorney make the correction, but this was prevented by the sudden death of Altman, which occurred that night. In the year 1926 Mabel Altman divided the "proceeds" from the land with Varnadore, but

in 1927, having married and become Mabel Cain, she repudiated the above-mentioned "conditions" and refused to pay over any part of the proceeds from the land. In February, 1928, Varnadore instituted an action against Mabel Cain, to reform the deed so that it should express the conditions above mentioned, and also to cancel the deed for non-performance of the conditions. The petition as amended alleged in substance all that is stated above; and further, that defendant had no other property besides that described in the deed; that defendant "has no property out of which a judgment could be collected, nor did the deceased leave any estate;" that "said property is of the reasonable value of twenty-five hundred dollars;" and that the "five dollars" expressed consideration named in the deed was not paid, nor was it intended by the parties to be paid. The exceptions are to judgments overruling the defendant's demurrer to the petition and her motion for a new trial. The special grounds of the motion for new trial were:

"4. Movant alleges that the court erred in refusing the granting of a motion for nonsuit when plaintiff first rested from introducing testimony. The jury having retired, defendant made a motion for nonsuit on the following grounds: First, because the evidence fails to sustain the contentions of the plaintiff that there was a mutual mistake of the parties in making this deed by the inadvertence of the scrivener, the evidence affirmatively showing that the deed was made in accordance with the instructions given to the scrivener. Second, because of the fact that, in order for there to be a reformation by reason of a mutual mistake between the parties, it would have to be shown that there was a mutual mistake between the parties not only to the case but to the instrument sought to be reformed; in other words, the deed sought to be reformed would have to be reformed by mutual mistake between the grantor and the grantee in this deed, and the evidence showing that the grantee in the deed itself was not a party to any of the alleged transactions which are set out for a reason for this deed to be reformed, but affirmatively showing on the contrary that she had no knowledge whatever of any alleged conditions claimed by the plaintiff to have been placed in the deed. Third, because the plaintiff, under the evidence in this case on trial, has no standing in a court of equity, the evidence showing that he does not come into court with clean hands, but that on the other hand he was a party to a fraudulent

scheme between himself on the one side and Carl Altman on the other to make a deed to the grantee, the defendant in this case, for the purpose of defrauding and defeating the creditors of Carl Altman; therefore under these facts he has no standing in a court of equity and will not be heard by a court of equity. The court overruled defendant's motion for nonsuit, to which ruling of the court defendant then and there excepted and now excepts and assigns the same as error. Movant contends that the remainder of the trial was nugatory, because the court refused to grant her motion for nonsuit and erred in refusing to grant the same.

"5. Movant contends and alleges that the court erred in refusing to charge the jury the following written request, which was presented to the court before the jury retired to consider the case and in accordance with the requirements of law: 'In cases of reformation of written instruments, where the plaintiff claims that the writing does not speak the true agreement of the parties, like the contentions of the plaintiff in this case, the law requires stricter proof on the part of the plaintiff than is required in an ordinary civil case. In an ordinary civil case mere preponderance of evidence is sufficient to produce mental conviction and to incline the mind of an impartial juror to one side of the issue rather than to the other and to support a verdict; but in a case of reformation of instruments the evidence in behalf of the one seeking the reformation, in order to authorize a verdict in favor of reformation, must be clear, unequivocal, and decisive.' The court refused to charge this request as presented, but charged the jury that preponderance of the evidence was all the burden the plaintiff had to carry in cases of reformation of instruments, in the following language: 'The burden is on the plaintiff to make out his case before you are authorized to find in his favor, and he must make out his case and convince you that he is entitled to recover by what the law calls the preponderance of the evidence, and what is meant by that is that superior weight of the evidence on the issues involved, which, while it may not wholly free the mind from a reasonable doubt, is yet sufficient to include a reasonable and impartial mind to one side of the issue rather than to the other.' This is the definition of preponderance of the evidence; but movant alleges that the court should have gone farther; in every reference in his charge to the preponderance of the evidence he should have

charged that this preponderance must be shown by evidence that was clear, unequivocal, and decisive. The court refused to charge the request as alleged, to which refusal the defendant then and there excepted and now excepts and assigns the same as error, on the ground that the court magnified the rule of mere preponderance of the evidence and minimized the stronger rule necessary in cases of reformation of instruments, and thereby the jury was misled in the consideration of the evidence and the making up of their verdict.

"6. Movant alleges that the court erred in refusing to charge the following written request to charge in this case presented to the court before the jury retired for the purpose of making up their verdict and within the time required by law to be presented to the court: 'I charge you further, gentlemen of the jury, that in a case like this the testimony of the grantor himself to the fact of his intention, and that he labored under a mistake when he made the deed, would not be sufficient unless it is sustained by other testimony or by corroborating circumstances. In this case, Mr. L. S. Varnadore being the grantor in the deed, his testimony alone as to the mistake, if any was made, would not be sufficient, without corroborating circumstances. It is not for the court to say when the testimony is corroborated, but this is a matter for the jury to pass upon under all the facts and circumstances of the case. If you should find that his testimony has not been corroborated by other testimony nor by corroborating circumstances, then he would not be entitled to recover, and you should find in favor of the defendant, Mrs. Mabel Cain.' The court erred in refusing to charge this request, because it is the law and rule of evidence in cases of the kind at bar; that there is no evidence in the case showing that a mistake was made in the deed, except the evidence of the plaintiff, and that there are no corroborating circumstances to support his testimony; and the jury should have been charged this rule of law, and the failure of the court to so charge the request misled the jury in arriving at their verdict and worked an injustice on the defendant, now the movant. To the ruling of the court refusing to charge the request as presented the defendant then and there excepted and now excepts and assigns the same as error.

"7. Movant alleges that the court erred in refusing to charge the following written request to charge in this case presented to the

court by the counsel of defendant before the jury retired to consider their verdict and within the time required by law to present such requests to the court: 'You will have out with you a deed from L. S. Varnadore to Mrs. Mabel Altman, now Mrs. Mabel Cain. It is a valid deed in form; and if you should find that the plaintiff signed it, knowing its contents, or by the exercise of ordinary diligence could have read the deed and learned its contents, he would not be entitled to recover. A deed being an instrument in the present case under the solemn seal of the grantor, the law requires him to exercise ordinary diligence to learn the contents of what he is signing. Equity will not reform a written contract because of mistake as to the contents of the writing on the part of the .complaining party who is able to read, and fraud of the other party which consisted only in making false representations as to such contents, on which the complaining party relied as true because of confidence of the party making them, no fiduciary or confidential relation existing between the parties, and no sufficient excuse appearing why the complaining party did not read the contract.' Movant alleges that this charge should have been made to the jury as being all applicable to the case, the evidence showing that plaintiff could read and had taught school, and no excuse being shown why the complaining party did not read the contract. By failing to charge this request the jury was misled to the prejudice of the defendant in the case in making up their verdict; and if it had been charged, plaintiff believes the jury would have returned a different verdict and one in her favor, and so alleges. To the refusal of the court to charge the request as presented in writing in due time the defendant then and there excepted and now excepts and assigns the same as error, on the ground that it was applicable to the facts of the case and the jury was misled by the failure of the court to make such charge when the jury made up their verdict. If said request had been charged, there would have been a different result in the jury's making up of their verdict.

"8. Movant alleges that the court erred in refusing to charge the following written request to charge in this case presented to the court by counsel for the defendant before the jury retired to consider the case and within the time required by law to present such requests to the court: 'The principles of equity

require that he who comes into a court of equity must do so with clean hands. This maxim has been expressed: 'He that hath committed iniquity shall not have equity.' Thus equity will not lend its aid to set aside a conveyance executed to defraud third parties. I charge you that [if?] you should find that the plaintiff, L. S. Varnadore, intended at first to make a deed to Carl Altman, and later, in order to delay or defeat the creditors of Carl Altman, he executed the deed to Mabel Altman, Carl's wife, he would not now be allowed to come into a court of equity to invoke its aid in reforming such deed, and in that event you should find in favor of the defendant.' Movant alleges that this principle of equity should have been charged in this case under the facts and evidence of the case; that it was not in the general charge nor covered by any part of the general charge. There is no dispute in regard to the reason why plaintiff made the deed in question to the wife of Carl Altman in order to help Carl Altman avoid paying his debts. Then the plaintiff comes into court and asks for the reformation and cancellation of the deed because the wife of Carl Altman fails to carry out the unknown contract of which she was not a party and not knowing the terms of the contract which she is charged with violating. For this reason movant contends that the court erred in refusing to charge the request as presented.

"9. Defendant requested the court to charge the jury as follows: 'Insolvency means the condition of a person who is unable to pay his debts. I charge you that before you would be authorized to find one to be insolvent it would be necessary that debts exist and be proved, and that the insolvent person has not sufficient money or property to pay the same.' The court charged the jury this request, and then qualified it by charging as follows: 'Now I charge you in that connection that if in this case the defendant had no property and had no other debts, but if you should find that this contract was made as contended for by the plaintiff and that he is entitled to recover, and that in case he got a judgment against her for failing to perform the contract that she would not be able to pay that debt by reason of having no property, that would render her insolvent so far as this case is concerned.' Movant contends and alleges that this additional charge on the subject of insolvency is error, upon the ground, first, because the court comes to the rescue of the plaintiff against the defendant in

her contention that she is not insolvent and that her insolvency is not proven in this case. Second, because the court failed to take into consideration that if the reformation of the deed should be granted but cancellation denied, the defendant would still have the 94 acres of land out of which a judgment could be made and collected by levy and sale, in addition to what personal property she might have and what money she might have in the bank. Third, because the court intimated his opinion as to the outcome of the case and the verdict of the jury, and provided a way by which they would feel secure in making such a verdict as was expected by the court. Fourth, because it is not the law. Insolvency can not be presumed to exist in the future, but rather the law presumes that all people will work and meet their debts, especially debts that have not been made and are not in existence. Fifth, because this part of the charge was not applicable to the facts in this case. It is inevitable that if reformation is granted and cancellation denied, the defendant would have the lands in dispute, and the court proceeds to charge the jury on the assumption that they can not grant reformation without cancellation, and in that event the defendant would be stripped of all her property and be insolvent; and the jury was misled by this charge into the conclusion that they could not grant one without the other, and that would render the defendant insolvent 'so far as this case is concerned.' Movant contends that the court should have stopped at the end of the request, and not to have undertaken to surround this request by the additional charge. Sixth, because the court intimated his opinion that it had been established that the defendant owed this debt, in the words, 'I charge you in that connection that if in this case the defendant had no property and had no other debts.' The use of the word 'other' intimated that the court was of the opinion that she did owe this debt, that is the debt for the breach of a contract which the plaintiff alleged should have been put in the deed. Plaintiff alleges that this 94 acres of land is worth $2500, and then undertakes to show that if reformation is granted the defendant would be insolvent, in a suit for the breach of the condition in the deed; and the court assumes in this charge that this would be true. Seventh, because the court eliminated by this charge the necessity of the proof by the plaintiff that the defendant was insolvent, that the defendant owed debts and was unable to

pay them and had not sufficient money or property to pay them, and instructed the jury that they could presume that she would be insolvent by the time the plaintiff got through with her. This was the meaning and result of the charge, and the jury was misled thereby to the prejudice of the defendant in the trial of the case; and if it had not been added to the request to charge, the result of the finding by the jury would have been different and the verdict would have been different. To this charge of the court the defendant then and there excepted and now excepts and assigns the same as error, on the grounds as alleged.

"10. Movant alleges that the court erred in his charge to the jury in stating the contention of the defendant, by leaving out one of the main contentions of the defendant, in that even if they find that the plaintiff is entitled to the reformation of the deed in question, that would not necessarily carry with it the necessity of cancellation, and that even if they found for reformation they might also stop there and not find for cancellation. This contention of the defendant was presented in the opening statement of counsel for the defendant before the jury and urged in their argument before the jury, and should have been included in the charge of the court in stating the contentions of the defendant. Nowhere in the charge of the court is the proposition laid down that the jury could find for reformation except in connection with cancellation, and nowhere is the jury charged that they could return a verdict for reformation and not for cancellation. The movant alleges that this was error in the court, and then and there excepted to same and now excepts and assigns the same as error, upon the grounds that under the evidence and pleadings in the case this contention should have been charged even without written request of counsel for defendant, and that the omission of same was fatally erroneous and the jury was misled thereby and the defendant was prejudiced thereby, and that if it had been properly presented to the jury a different verdict could and would have been rendered. Second, because cancellation is not the remedy for violation of the terms and conditions in a deed, but suit for damages is the remedy, and courts are more in favor of reformation than cancellation.

"11. Movant alleges that the court erred in charging the jury as follows: Now, gentlemen of the jury, if you should find in this case that the plaintiff has shown by a preponderance of evidence that

in the execution of this deed it was made in pursuance of an express contract made between himself and Carl Altman, that the consideration of it was the support as set out in plaintiff's petition, and that they both intended to make that kind of contract, and that they came here to Baxley for that purpose, and for some reason, mistake or accident, that they failed to carry out their contract as agreed upon, and executed by mutual mistake a contract different from the one they agreed upon and the one they were intending to execute, and that that contract had been breached, and that this defendant is unable from poverty to pay a money damage to the plaintiff for the breach thereof, and that in order to carry out his contract and to give to the plaintiff the relief that he is entitled to, if you find he is entitled to relief, then in that event it would be your duty to find for the plaintiff; and in that event, if you should believe that the defendant has been damaged by reason of such a verdict as you had found, cancelling this deed which is now in her, then you would consider the question of how much money should be paid to her before the plaintiff could get this land back in order to save her harmless from damage and injury and to leave her in as good position as she would have been in if the deed had not been executed, doing full justice to both parties. In that event the form of your verdict would be: We, the jury, find for the plaintiff; and if you found there was no damage to the defendant, you would stop there and date it and sign it by one of your number. If you find there was damage necessary to restore the defendant to her former status, then you would add the words, We, the jury find for the plaintiff, and find for the defendant so many dollars damages; then date it and sign it by one of your number as foreman. If you should fail to find from a preponderance of the evidence that the deed did not speak the contract between the parties and was not executed by mutual mistake of the parties, and when I say parties I mean the plaintiff and the deceased Carl Altman; in other words, if you should fail to find by a preponderance of the evidence that the plaintiff has made out a case as alleged, then it would be your duty to find for the defendant, and in that case the verdict would be: We, the jury, find for the defendant; and nothing more. Or, if you should find, gentlemen, or believe under the evidence that there was no mutual mistake made and that the contract was made as intended to be

made, then you ought to find for the defendant.' Movant contends and alleges that this instruction by the court to the jury was insufficient under the evidence and pleadings and contentions of the parties. In the first place, it does not require any more evidence than a mere 'preponderance,' when the special rule requires that it shall be 'clear, unequivocal, and decisive.' In the second place, the court authorizes the jury to find in favor of the plaintiff against the defendant for contracts made with her husband, Carl Altman, of which she had no notice. Third, the court charged the only grounds of reformation to be 'some reason, mistake or accident, that they failed to carry out their contract as agreed upon.' Fourth, the court failed to instruct the jury that they could return a verdict for reformation and not for cancellation, and eliminated that possible verdict from the consideration of the jury. Fifth, the court called the parties of the suit and the parties to the deed as though they were one and the same, by saying to the jury, 'and when I say parties I mean the plaintiff and the deceased Carl Altman.' Movant contends that the parties charged by the court should have been the parties to the suit. If the mistake was made by Carl Altman and he was responsible for carrying out the contract, then the administrator of Carl Altman should have been made a party to the suit. Plaintiff refuses to admit or allege that the deed in question is a voluntary deed, but contends that it was intended to be a deed of bargain and sale; and yet he invokes the doctrine of the reformation of a voluntary deed, which he should not be allowed to do, and the court should have so instructed the jury. Sixth, the court charged the jury the principle that if the plaintiff knew of the contents of the deed he was executing, he could not recover; but the court should have gone farther and charged the jury that if the plaintiff knew of the contents of the deed when he signed it, or by the exercise of ordinary diligence he could have ascertained the contents of the deed (he being able to read), he could not recover. Not only this, but the court failed to charge the principle, even in case the grantor is able to read, that it would be necessary for the plaintiff to show that some fiduciary or confidential relation existed between him and the other party, or some excuse was alleged and proven why the complaining party did not read the contract. To these errors as alleged the defendant then and there excepted and now excepts and assigns the same as error on the grounds as alleged."

The foregoing exceptions and assignments of error are covered by the rulings stated in the syllabus, which need not 'be here elaborated. *Judgment affirmed. All the Justices concur.*